IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

LINDA T. FLEMMING, :
:
      Plaintiff, :
:
  VS. : Civil Action File No.
: 1 : 09-CV-129 (WLS)
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
      Defendant. :

## **RECOMMENDATION**

      Plaintiff filed applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) on July 5, 2006 (Tr. 151-61). She alleged an onset of disability of February 1, 2001 (Tr. 151, 156, 181). The Agency denied these applications initially and on reconsideration (Tr. 61-68, 72-79, 279-86). Plaintiff timely requested a hearing before an administrative law judge (ALJ), but failed to appear at the scheduled hearing (Tr. 29-40, 80). After showing cause for her failing to appear at the initial hearing, Plaintiff appeared and testified at a supplemental hearing (Tr. 41-60). In a hearing decision dated March 2, 2009, the ALJ found Plaintiff failed to prove she was disabled for the period before October 15, 2007, but found she proved she was disabled as of October 15, 2007, for SSI only (Tr. 12-28). Plaintiff's insurance for disability insurance benefits expired on March 31, 2005. The hearing decision rested as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 19, 2009 (Tr. 1-3). The hearing decision is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff is proceeding herein *pro se*.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity.

*Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that the Plaintiff had "severe" impairments of degenerative disc and joint disease, hypertension, reflux, depression, anxiety, and a substance-addiction disorder, and that as of October 15, 2007, Plaintiff had the additional impairment of a papillary thyroid carcinoma. (Tr. 21). The ALJ found that, for the period from her alleged onset date through October 14, 2007, Plaintiff had the residual functional capacity to perform a range of light work activity (Tr. 23-25), finding that Plaintiff could perform work that required no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling, or work requiring no more than simple, routine, repetitious tasks, with one- or two-step instructions (Tr. 23-25).

The ALJ found that as of October 15, 2007, Plaintiff lacked the residual functional capacity to sustain work at any exertional level (Tr. 25). This finding was based on the fact that, although Plaintiff's thyroid treatment was conservative and routine prior to October 15, 2007, Plaintiff required emergency treatment for neck pain associated with her thyroid on October 15, 2007, and required heightened treatment thereafter (Tr. 25). The ALJ next found Plaintiff was unable to perform any of her past relevant work at all times since her alleged onset date (Tr. 25-26). However, using vocational expert testimony and looking to Medical-Vocational Guideline rules 202.14 and 202.21 as a framework for decision making, the ALJ found that Plaintiff had the capacity to perform jobs that existed in significant numbers in the economy for the period prior to October 15, 2007 (Tr. 27-28), and was therefore not disabled prior to October 15, 2007.

The Social Security Act and regulations require that in order to receive Title II DIB( disability insurance benefits), a claimant must establish that her condition became disabling before the expiration of her insured status. See 42 U.S.C. § 423(a), (c)(1); 20 C.F.R. §§ 404.101, 404.130, 404.131 (2009). Thus, for purposes of her claim for Title II DIB, the relevant question is whether Plaintiff proved she became disabled on or before March 31, 2005. For SSI (Supplemental Security Income), the relevant question is whether Plaintiff proved she was disabled prior to October 15, 2007.

Plaintiff raised no allegations in her brief in support of the position that she was disabled as of her alleged onset date of February 1, 2001 or prior to October 15, 2007. (Doc. 16). However, in her complaint (Doc. 1), Plaintiff states that she has nine enumerated illnesses that caused severe pain up to the level of ten on a scale of one to ten, resulted in significant treatment since the hearing decision of March 2, 2009, and caused constant pain at a level between four and nine. She also states that she could not perform work to the satisfaction of any employer, and that the ALJ erred in relying on the fact that she took care of her children in determining her claim.

The medical evidence shows the following: in April 2005, Plaintiff presented to Dr. Wallace reporting a history of hypertension with non-specific complaints of dizziness and headaches, a history of gastroesophageal reflux disease (GERD), a history of pain in the right foot and knee and the cervical and lumbar spine (which radiated to the right leg and left arm), a history of a chest discomfort, and a history of exertional dyspnea (Tr. 459). Upon examination, Plaintiff was normal with regard to her gait, cardiac function, and lung function and she had no motor loss, normal sensation, and full range of all joints except for the lumbar spine; however she had an enlarged thyroid, 2+ edema of the extremities, moderate varicose veins on the left and severe varicose veins on the right, status dermatitis, delayed deep tendon reflexes, and pain with motion of the lumbar

spine, right knee, and right hip (Tr. 460-61). An x-ray revealed Plaintiff had chronic degenerative changes, most prominent at L3-L4 (Tr. 462). Dr. Wallace diagnosed history of GERD, multiple arthralgias, well-controlled hypertension, chest pain of an unknown etiology, and hyperventilation alkalosis (Tr. 461).

In September 2006, Plaintiff presented to Dr. Mehta with complaints of low back pain that was worse upon getting up from a sitting position. (Tr. 602). She also presented with hypertension and anxiety/depression. (Tr. 602). Dr. Mehta noted Plaintiff's past problems as hypertension, GERD, hypothyroidism, and some kind of heart problem (Tr. 602). On examination, Plaintiff had mild shortness of breath with mild rhinopharyngitis and enlarged and inflamed nasal turbinates, but no sinus tenderness. (Tr. 603). She had a few missing teeth, no abnormal cardiac sounds, decreased breath sounds with occasional rhonchi, mild edema, within normal limits for central nervous system function, anxiety, and normal range of motion for all joints except for having slightly reduced motion of the back, hips, and knees (Tr. 602, 604, 606). Dr. Mehta diagnosed her with edema, chronic polyarthritis, depression, anxiety, hypertension, obesity, degeneration of intervertebral disc (not otherwise specified), and lower back pain (Tr. 602). Dr. Mehta also indicated that Plaintiff could not see without glasses, but saw fairly well with glasses (Tr. 602). Further, he indicated Plaintiff would benefit from a psych evaluation (Tr. 602). On a questionnaire, Dr. Mehta indicated Plaintiff had only some level of limitation in her ability to reach, push, and pull (Tr. 605, 607-08). Dr. Mehta also reported that Plaintiff was not trying to do various movements at different joints (Tr. 603-04, 606, 608).

In March 2006, a cervical spine CT scan indicated no acute abnormality with degenerative disc disease with mild to moderate spondylosis at C5-C6 (Tr. 440-41, 721, 738, 821-22), and a lumbar x-ray indicated no acute findings and normal alignment, having mild degenerative disc

5

disease (Tr. 722, 823). Plaintiff's records prior to October 15, 2007, also reflect treatment for a sinus problem, vaginal discharge, anxiety, depression, a sore throat, a bout of viral syndrome, exertional shortness of breath with fatigue, head and body aches, routine mammogram and other routine testing (Tr. 378-444, 552- 61, 571-78, 584-601, 686-738, 824-51), and several visits when she reported she was out of her medication for up to three weeks (Tr. 386, 388, 416). Other records before October 15, 2007, show that Plaintiff's thyroid was enlarged in March 2006, and indicate evaluation for that enlarged thyroid in early to mid-1997 (Tr. 290-324, 326-76, 635-65, 736-37, 764-65, 819-10).

Plaintiff received some specialized mental health treatment since December 2003, which showed symptoms of restlessness, reduced concentration, and poor sleep (Tr. 24-25, 498-551, 584-89, 899-916). However, Plaintiff was terminated from further mental-health treatment in July 2004 for being noncompliant with such treatment (Tr. 550-51). In March 2007, Plaintiff's mental symptoms became exacerbated (Tr. 24-25, 936-39). While Plaintiff was assessed with a low global assessment of functioning (GAF) at this flare-up, the evidence does not show she required emergency treatment or hospitalization for this period of increased symptoms (Tr. 25, 936-39). Her GAF and symptoms were in the moderate range at most other times on or before October 31, 2007. (Tr. 498, 508, 551, 927).

Gary Kittrell, Ph.D., examined Plaintiff consultatively in August 2006. (Tr. 590-97, 597-601). At that time, Plaintiff was not involved in any mental health treatment and was not taking any mental-health medication at that time, but had been prescribed Cymbalta and Zoloft in the past. (Tr. 591). Dr. Kittrell diagnosed Plaintiff with recurrent major depression with psychotic features and also with generalized anxiety disorder (Tr. 593). He indicated that bipolar and personality disorders needed to be ruled out (Tr. 593). He assessed that Plaintiff may have had difficulty in making decisions to carry out a complex job due to indecisiveness and confusion regarding choices and

criteria and she may have had difficulty dealing with the general public due to agitation and anxiety (Tr. 594). Further, he assessed Plaintiff would have difficulty following through with work tasks in general (Tr. 594).

*Credibility*

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553,1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt v. Sullivan*, supra at page 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision." *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir.1986). The ALJ may consider the nature of a plaintiff's symptoms, the effectiveness

7

of medication, a plaintiff's activities, and any conflicts between a plaintiff's statements and the rest of the evidence. See 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

Here, the ALJ found Plaintiff not fully credible to the extent she alleged she could not work prior to October 15, 2007. The ALJ first considered Plaintiff's physical status, noting that, except for a short hospitalization for shortness of breath in March 2005, her treatment for physical problems appeared rather routine prior to October 15, 2007 (Tr. 24). The ALJ also relied on the medical evidence, as summarized above, in concluding that the findings of Dr. Wallace and Dr. Mehta were not contradicted by other medical evidence in the record, which showed the presence of hypertension, degeneration of the spine and joints, and reflux, but did not support a total inability to work at a limited light level for the period prior to October 15, 2007. (Tr. 24).

The ALJ also considered Plaintiff's activity level in relation to her complaints. (Tr. 24-25). The ALJ noted that although Plaintiff testified she could lift and carry no amount of weight full time, she demonstrated the ability to maintain a household and care for her son who has, and was disabled by, attention deficit hyperactivity disorder. (Tr. 24). Further, the ALJ noted that although Plaintiff testified she had poor sleep, reduced concentration and memory, and difficulty making basic decisions (Tr. 25, 52-54), her activities actually demonstrated she had the ability to function day-to-day at a level consistent with the ability to perform simple tasks (Tr. 25). Such activities, as indicated above, include caring for her son, maintaining a household (light housework, washing clothes), taking her son to and from work, caring for her personal needs, managing money, reading, watching movies, playing play-station games, talking on the telephone, exploring computers, listening to music, attending church, and going shopping for groceries and clothes (Tr. 24-25, 45-46, 54-55, 172-77, 208-11, 257-61, 590-91). The ALJ also noted that the medical evidence does not show that Plaintiff had or reported any limiting side effects from her medication (Tr. 24).

The Eleventh Circuit has held that an ALJ may, among other factors, consider a claimant's daily activities as evidence that they can do more than they allege. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). The ALJ did consider Plaintiff's ability to care for a child with ADHD; however, the ALJ also considered many other factors, including Plaintiff's reported daily activities and the medical records, in concluding that she was not as disabled as she alleged during the relevant time period.

In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth, supra*, 703 F.2d at 1239. The undersigned finds that the ALJ's decision was based upon substantial evidence.

*New Evidence*

In her complaint, Plaintiff cites to evidence of treatment since the ALJ's March 2, 2009, hearing decision. (Doc. 1). She alleges that, since the hearing decision, she required surgery for removal of thyroid cancer, three hospitalizations for chronic hypertension, and two hospitalizations for kidney failure. She also claims she was to undergo radiation treatment for her thyroid condition, but this treatment was postponed due to alleged kidney failure.

New evidence submitted subsequent to the ALJ's decision is part of the administrative record. Keeton v. Dept. of Health and Human Services, 21 F.3d 1064 (11th Cir. 1994). The court may review this additional evidence to determine whether it warrants a remand. 42 U.S.C. § 405(g). To obtain a remand, however, the plaintiff must show that: 1) the evidence is new and noncumulative; 2) the evidence is material; and 3) there was good cause for failure to submit the evidence to the ALJ. Caulder v. Bowen, 791 F.2d 872, 879 (11th Cir. 1986). Material evidence is that which has a

reasonable possibility of altering the ALJ's decision. Wright v. Heckler, 734 F.2d 696 (11th Cir. 1984).

Plaintiff attached no medical evidence to her complaint or brief to substantiate this post-hearing decision treatment. Therefore, there is nothing for the undersigned to review to see if remand for consideration of new evidence under Sentence Six is warranted. Moreover, unless that evidence is relevant to Plaintiff's condition prior to October 15, 2007, the date on which the ALJ determined Plaintiff became disabled, any evidence would be cumulative and not material to the time period in question.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405 (g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 17th day of August, 2010.

S//Thomas Q. Langstaff
THOMAS Q. LANGSTAFF
UNITED STATES MAGISTRATE JUDGE

msd